USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/18/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
JON BORGESE,                        :
Individually and as Guardian of     :
LB., and on Behalf of All Others    :
Similarly Situated,                 :
                                    :       20 Civ. 1180 (VM)
                    Plaintiffs,     :
         - against -                :       **DECISION AND ORDER**
                                    :
BABY BREZZA ENTERPRISES LLC; THE    :
BETESH GROUP; and THE BETESH GROUP  :
HOLDING CORPORATION, INC.,          :
                                    :
                    Defendants.     :
------------------------------------X

**VICTOR MARRERO, United States District Judge.**

Plaintiff Jon Borgese ("Borgese" or "Plaintiff") brings this putative class action, on behalf of himself as his daughter's guardian, and all others similarly situated, against Baby Brezza Enterprises LLC ("Baby Brezza") and The Betesh Group Holding Corporation, Inc. (collectively, "Defendants")[1] alleging failures in the design, sale, and marketing of the Baby Brezza Formula Pro and Formula Pro Advanced machines (the "Baby Brezza machines" or the "machines"). (See "Complaint," Dkt. No. 2.) Plaintiff purports to represent a class of "all purchasers in the United States who have purchased a Baby Brezza Formula Pro or Formula Pro Advanced," excluding Defendants and the judicial staff

---

[1] Plaintiff has consented to the dismissal of an additional defendant, The Betesh Group, upon Defendants' representation that it is not an independent entity. Thus, defendant The Betesh Group is hereby dismissed.

involved in this action, as well as their respective affiliates.

Now before the Court is Defendants' premotion letter to dismiss, submitted via email to chambers on April 23, 2020, which the Court construes as a motion to dismiss under Federal Rules of Civil Procedure ("Rules") 23(d)(1)(D), 12(b)(1), and 12(b)(6).[2] (See "Letter Motion," Dkt. No. 22.) The Court also received Plaintiff's opposition letter submitted via email to chambers on April 30, 2020. (See "Opposition," Dkt. No. 23.) For the reasons stated herein, the Letter Motion is **GRANTED** in part pursuant to Rules 23(d)(1)(D) and 12(b)(1) insofar as the class allegations are stricken and the case is stayed. Accordingly, and as further set forth below, the Court does not address whether dismissal is appropriate pursuant to Rule 12(b)(6) and will instead stay further proceedings under the doctrine of Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976), reserving judgment until the court in identical litigation Plaintiff filed in New York State has made a determination on the merits of the parties' dispute.

## I.   BACKGROUND[3]

---

[2] Kapitalforeningen Lægernes Invest v. United Techs. Corp., 779 F. App'x 69, 70 (2d Cir. 2019) (Mem.) (affirming the district court's ruling deeming the exchange of letters as the motion itself).

[3] Except as otherwise noted, the factual background below derives from the Complaint and the facts pleaded therein, which the Court accepts as

A.   FACTUAL BACKGROUND

The Baby Brezza machines are manufactured and sold as automatic baby formula mixing machines. Plaintiff alleges that product marketing includes the claim: "Patented mixing technology automatically mixes formula and water to perfect consistency." (Complaint ¶ 15.) But, according to Plaintiff's allegations, the machines do not perform as marketed and in fact mix less formula than required for proper nutrition.

Plaintiff contends that as a result of consuming formula mixed by the machines, his child and other similarly situated children have received poor nutrition and have suffered from associated complications and injuries. Specifically, Plaintiff contends that his child lost weight while being fed with formula mixed by the Baby Brezza machines and required medical visits, resulting in medical expenses, physical pain, and emotional distress.

Plaintiff alleges that Baby Brezza has sold thousands, "if not tens of thousands" of the machines, despite being aware of complaints regarding mixing problems "for years." (Complaint ¶¶ 2, 4.) Plaintiff further asserts that Defendants received and suppressed reports of the potential risks associated with the machines and failed to warn consumers

_____

true for the purposes of resolving this motion. See Section II, infra. Except where specifically quoted, no further citation will be made to the Complaint.

regarding these risks. According to the allegations, the products were defective and a number of alternative designs were available, which Plaintiff insists would have been safer. Plaintiff argues that Defendants' acts were intentional and aimed at securing their own economic gain, resulting in damages, including the costs of the machine and medical and other expenses.

B.   <u>PROCEDURAL HISTORY</u>

Plaintiff filed the Complaint in this putative class action on February 12, 2020.[4] (<u>See</u> Dkt. No. 2.) Two days before that, Plaintiff filed a near-identical complaint in New York state court (the "State Court Action").[5] The Complaint in the present action and the complaint in the State Court Action are indistinguishable in every meaningful way except the class definition. The action pending before this Court brings claims on behalf of "all purchasers in the United States," whereas the State Court Action brings claims on behalf of "all purchasers in the State of New York."

---

[4] The Court notes that a version of the Complaint was filed on February 11, 2020, but a deficiency in the file type required Plaintiff to refile the Complaint the following day. (<u>Compare</u> Dkt. No. 1, <u>with</u> Dkt. No. 2.) For the purposes of this motion, the Court considers the Complaint to have been filed on February 12, 2020 but notes that the one-day difference does not affect any of the analysis contained herein.

[5] <u>See</u> <u>Jon Borgese v. Baby Brezza Enters. LLC</u>, Index No. 151470/2020 (N.Y. Sup. Ct. filed Feb. 10, 2020).

Consistent with the Court's Individual Practices, Defendants, in the Letter Motion, notified Plaintiff of perceived deficiencies in the Complaint. Defendants argue that (1) the class allegations must be stricken because Plaintiff has failed to establish predominance, the claims are highly individualized and unsuitable for class treatment, and the class lacks standing; (2) the Complaint must be stayed under the first-filed rule because it is duplicative of the State Court Action; and (3) each of the claims fails on the merits.[6]

Plaintiff's Opposition challenges these asserted grounds for dismissal. In particular, Plaintiff contends that (1) the arguments for striking the class are premature, incorrect, and may be cured by subclasses; (2) the first-filed rule is inapplicable; and (3) each claim, contrary to Defendants' assertions, has been sufficiently pleaded.

## II.   LEGAL STANDARDS

A.   RULE 23(d)(1)(D)

The district court must, "[a]t an early practicable time after a person sues or is sued as a class representative . . . determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). Ultimately, "[w]hether

---

[6] Defendants also argue that Plaintiff cannot pursue injunctive relief because he has not alleged any future harm. In his Opposition, Plaintiff withdraws the request for injunctive relief.

to grant or deny a motion to strike lies within the court's sound discretion." Garcia v. Execu|Search Grp., LLC, No. 17 Civ. 9401, 2019 WL 689084, at *1 (S.D.N.Y. Feb. 19, 2019) (citations omitted).

Ordinarily, such a determination follows a motion for class certification, but the defendant "need not wait for the plaintiff to act," and may, as here, "move for an order denying class certification" before the plaintiff has filed such motion. Fedotov v. Peter T. Roach & Assocs., P.C., 354 F. Supp. 2d 471, 478 (S.D.N.Y. 2005) (citing 5-23 Moore's Federal Practice 3d § 23.82). When issues are "plain enough from the pleadings," they may be resolved without further discovery. See Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982). Thus, as long as the "complaint itself demonstrates that the requirements for maintaining a class action cannot be met," the Court may strike the class allegations at any practicable time after the suit has been filed. Landsman & Funk PC v. Skinder-Strauss Assocs., 640 F.3d 72, 93 n.30 (3d Cir. 2011); see also Camacho v. City of New York, No. 19 Civ. 11096, 2020 WL 4014902, at *3 (S.D.N.Y. July 16, 2020).

The plausibility standard applies to such motions.[7] See, e.g., Talarico v. Port Auth. of N.Y. & N.J., 367 F. Supp. 3d

_____

[7] The Court acknowledges that some courts in this district have declined to apply this standard. E.g., Garcia, 2019 WL 689084, at *3 (declining to apply the plausibility standard "because [the defendant's] motion does

161, 173 (S.D.N.Y. 2019) ("[A] motion to strike class claims
at the pleading stage can succeed where the claims fail to
state a plausible entitlement to relief on behalf of the
putative class members."). And "the plaintiff will bear the
burden of establishing the certification requirements of Rule
23." Id. (citing Amchem Prods., Inc. v. Windsor, 521 U.S.
591, 614 (1997); Caridad v. Metro-N. Commuter R.R., 191 F.3d
283, 291 (2d Cir. 1999); Cromer Fin. Ltd. v. Berger, 205
F.R.D. 113, 120 (S.D.N.Y. 2001)).

B.    RULE 12(b)(1)

     While Defendants move for a stay under the first-filed
rule, the Court finds that this rule is inapplicable for the
reasons set forth below, and construes Defendants' request
for stay as being made under Colorado River.

     "A motion to dismiss based on Colorado River is
considered as a motion to dismiss for lack of subject matter
jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules
of Civil Procedure." Tuebor Reit Sub LLC v. Paul, No. 19 Civ.

---

not test the legal sufficiency of the underlying claims, but the propriety
of the procedural vehicle of a class action"). But that approach seems to
be the minority, as numerous courts have applied the plausibility standard
to motions to strike such as the instant one. E.g., Duran v. Henkel of
Am., Inc., 450 F. Supp. 3d 337, 358 (S.D.N.Y. 2020) (applying the
plausibility standard); Passelaigue v. Getty Images (US), Inc., No. 16
Civ. 1362, 2018 WL 1156011, at *10 (S.D.N.Y. Mar. 1, 2018) (same); Kassman
v. KPMG LLP, 925 F. Supp. 2d 453, 462 (S.D.N.Y. 2013) (same). In the
absence of binding precedent, the Court elects to apply what appears to
be the majority rule. The Court is persuaded, however, that even under a
less exacting standard, the analysis here would be unchanged.

8540, 2020 WL 4897137, at *3 (S.D.N.Y. Aug. 19, 2020)
(citations omitted). In resolving a motion to dismiss under
Rule 12(b)(1), the Court "must accept as true all material
facts alleged in the complaint and draw all reasonable
inferences in the plaintiff's favor." Saleh v. Sulka Trading
Ltd., 957 F.3d 348, 353 (2d Cir. 2020) (quoting Sharkey v.
Quarantillo, 541 F.3d 75, 83 (2d Cir. 2008)). The Court may
"refer[] to evidence outside of the pleadings." Zappia Middle
E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d
Cir. 2000). And "the party asserting subject matter
jurisdiction 'has the burden of proving by a preponderance of
the evidence that it exists.'" Tandon v. Captain's Cove Marina
of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014) (quoting
Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)).

Whether to abstain is within the sound discretion of
the district court." Arkwright-Bos. Mfrs. Mut. Ins. Co. v.
City of New York, 762 F.2d 205, 210 (2d Cir. 1985) (citing
Giardina v. Fontana, 733 F.2d 1047, 1053 (2d Cir. 1984)).

### III. DISCUSSION

#### A.   THE MOTION TO STRIKE THE CLASS ALLEGATIONS

Defendants argue that the class allegations should be
stricken because Plaintiff cannot establish predominance for
two reasons. First, Defendants contend that the Court cannot
undertake the required analysis of the variations in state

law to determine whether common questions of law predominate because the Complaint fails to identify any other potential state's law outside New York. Second, according to Defendants, questions regarding whether putative class members properly used or maintained the machines, and what medical and other expenses accrued, are highly individualized and predominate over the generalized questions.

Plaintiff counters that Defendants' focus on predominance is misplaced as Plaintiff has asserted eligibility for class treatment under not just Rule 23(b)(3), but also Rules 23(b)(1) and 23(b)(2). Plaintiff further contends that whether variations in state law defeat predominance requires a thorough analysis that is more appropriate at the class-certification stage and thus premature. And Plaintiff argues that, at any rate, the variations in state products-liability law are "only minor" in this case, and thus, the claims will be established based on generalized proof. To the extent significant variations exist, Plaintiff insists that this issue can be cured using subclasses.

While motions to strike are generally disfavored, Chenensky v. N.Y. Life Ins. Co., No. 07 Civ. 11504, 2011 WL 1795305, at *1 (S.D.N.Y. Apr. 27, 2011), the Court is persuaded that the class allegations should be stricken here

because it is clear from the pleadings that the certification requirements cannot be met. See Camacho, 2020 WL 4014902, at *3 (striking class allegations before a motion for class certification was filed because it was "already clear" that the defects could not be cured).

Under Rule 23(a), the threshold prerequisites to a class action are numerosity, commonality, typicality, and adequacy of representation. "In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." Amchem, 521 U.S. at 614. Rule 23(b)(1), "covers cases in which separate actions by or against individual class members would risk establishing incompatible standards of conduct for the party opposing the class," or would "as a practical matter be dispositive of the interests" of nonparty class members "or substantially impair or impede their ability to protect their interests." Id. (citations omitted). Next, Rule 23(b)(2) permits class actions for declaratory or injunctive relief when "the party opposing the class has acted or refused to act on grounds generally applicable to the class." Id. And lastly, Rule 23(b)(3) permits certification when common questions "predominate over any questions affecting only individual members" and class resolution is "superior to other available methods for the fair and

efficient adjudication of the controversy." Id. at 615 (citations omitted).

As previously noted, Defendants argue that Plaintiff cannot meet the Rule 23(b)(3) predominance requirement. Common questions predominate under Rule 23(b)(3) only if plaintiffs can show that "those issues in the proposed action that are subject to generalized proof outweigh those issues that are subject to individualized proof." In re Canon Cameras, 237 F.R.D. 357, 359 (S.D.N.Y. 2006) (quoting Heerwagen v. Clear Channel Comms., 435 F.3d 219, 226 (2d Cir. 2006)). "[P]utative class actions involving the laws of multiple states are often not properly certified pursuant to Rule 23(b)(3) because variation in the legal issues to be addressed overwhelms the issues common to the class." In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 126–27 (2d Cir. 2013). Despite variations in state law, certification may still be appropriate when "the states' laws do not vary materially." Id. at 127. But, to determine whether variations in state laws preclude certification, the Court must "take a close look" at whether the common legal questions predominate over individual ones. Langan, 897 F.3d at 97 (quoting Comcast, 569 U.S. at 34).

Here, the Court is unable to undertake the requisite analysis because the Complaint does not indicate where the

other purchasers of the Baby Brezza machines reside, where they purchased the machines, or where they may have suffered any resulting injury. The Court is therefore unable to determine which state laws apply, and in turn, whether those laws materially differ. Further complicating matters, Plaintiff does not assert any claims under federal law -- each of the ten causes of action here is brought under state law. To conclude that the class allegations have been plausibly alleged, the Court would have to assume that the majority of the claims are brought under state laws that have no "material" differences, without any indication as to which state laws might be implicated, and thus no basis to conclude that those state laws are similar. On its face, then, the Complaint does not allege *any* common legal issues, much less common issues that are "more substantial" than individualized ones. In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d at 118.

Nor is the Court persuaded that the availability of subclasses cures this pleading defect. While "the court is empowered under Rule 23(c)(4) to carve out an appropriate class" it is not "obligated" to do so on its own initiative. Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp., 993 F.2d 11, 14-15 (2d Cir. 1993). It is Plaintiff's burden to establish how the issues could be cured by subclasses, and the

conclusory statement in Plaintiff's Opposition does not
satisfy that burden. See United States Parole Comm'n v.
Geraghty, 445 U.S. 388, 408 (1980) (explaining that plaintiff
bears the burden of showing how the action may be subclassed
to avoid certification problems and "[t]he court has no sua
sponte obligation so to act").

Furthermore, while Plaintiff correctly points out that
the Complaint relies on Rule 23(b)(1) and Rule 23(b)(2) to
support the purported eligibility for class treatment --
assuming the passing and somewhat haphazard reference to
these statutes in one paragraph of the Complaint constitutes
reliance -- these additional provisions do not save
Plaintiff's class allegations.

First, because Plaintiff withdraws his prayer for
injunctive relief, and because the Complaint does not seek a
declaratory judgment, the purported class is not eligible for
class treatment under Rule 23(b)(2). See Berni v. Barilla
S.p.A., 964 F.3d 141, 146 (2d Cir. 2020) ("[A] class may not
be certified under Rule 23(b)(2) if any class member's injury
is not remediable by the injunctive or declaratory relief
sought.").

Second, Plaintiff cannot establish entitlement to class
treatment under Rule 23(b)(1) because subsection (b)(1)(A)
generally applies when, unlike here, the defendant "is

obliged by law to treat the members of the class alike . . . or where the party must treat all alike as a matter of practical necessity." Amchem, 521 U.S. at 614; see also Gonzalez v. City of Waterbury, No. 306 Civ. 89, 2008 WL 747666, at *3 (D. Conn. Mar. 18, 2008) (citing 2 Newberg on Class Actions, § 4.4, at 26 (4th ed. 2002) and 7AA Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1773 (3rd ed.)) ("Courts generally apply Rule 23(b)(1)(A) restrictively, to classes where there is a statutory obligation to treat all class members alike, or when practical necessity forces the opposing party to act in the same manner toward the individual class members and thereby makes inconsistent adjudications in separate actions unworkable or intolerable."); accord McDonnell-Douglas Corp. v. U.S. Dist. Court for Cent. Dist. of Cal., 523 F.2d 1083, 1086 (9th Cir. 1975) (explaining that "subdivision (b)(1)(A) was not intended to permit class actions simply when separate actions would raise the same question of law," and instead must be limited to instances when separate actions would risk incompatible standards of "required" conduct).

Likewise, Plaintiff cannot establish entitlement to class treatment under subsection (b)(1)(B) because Plaintiff has not identified any additional class members, or provided a basis to conclude that other, nonparty class members would

have any interest in the litigation apart from possible prejudice to any later action should Defendants prevail, which alone is insufficient. See Larionoff v. United States, 533 F.2d 1167, 1182 n.36 (D.C. Cir. 1976), aff'd, 431 U.S. 864 (1977) (citing Lamar v. H & B Novelty & Loan Co., 489 F.2d 461, 467 (9th Cir. 1973) and Richardson v. Hamilton Int'l Corp., 62 F.R.D. 413 (E.D. Pa. 1974)) ("It has been held that if the only practical effect which the putative class action would have on the interests of other members of the class is a stare decisis effect on actions filed in the same jurisdiction and perhaps a persuasive effect on actions filed in other jurisdictions, the suit would not qualify as a class action pursuant to Rule 23(b)(1)(B).").

Moreover, even if these issues could be cured by class discovery, the class allegations must be stricken for another, more fundamental reason. Plaintiff has "fail[ed] to identify a single member of the purported class other than [him]self and . . . plaintiff has failed to conduct an investigation to determine if there are other class members before filing this action." PFT of Am., Inc. v. Tradewell, Inc., No. 98 Civ. 6413, 1999 WL 179358, at *1 (S.D.N.Y. Mar. 31, 1999). In PFT, the court struck the class allegations because "the class action representations in the complaint are speculation and were not 'formed after an inquiry

reasonable under the circumstances.'" Id. at *2 (quoting Fed. R. Civ. P. 11(b)). The court explained that, "[i]f pleadings can be based on speculation and presented without reasonable inquiry, every complaint sounding in contract or commercial fraud could include Rule 23 class action allegations." Id.

The allegations in the present action fare no better than the allegations in PFT. Plaintiff here has set forth only conclusory allegations about the existence of other class members. Without more, the Complaint does not establish a plausible entitlement to class certification. See Goldberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 97 Civ. 8779, 1998 WL 321446, at *9 (S.D.N.Y. June 18, 1998), aff'd sub nom. Goldberg v. Merrill Lynch, 181 F.3d 82 (2d Cir. 1999) (rejecting class claims when "[n]o facts are alleged to support his conclusory allegations as to the purported members of the class"); see also Talarico, 367 F. Supp. 3d at 173 ("[A] motion to strike class claims at the pleading stage can succeed where the claims fail to state a plausible entitlement to relief on behalf of the putative class members.").

Furthermore, the Court is skeptical that the claims raised here are suitable for class resolution on the merits. The proposed class includes all buyers of the Baby Brezza machines. But beyond that, no other information about, or

16

similarities among, the purported class members are alleged, seemingly because Plaintiff has not identified any other class members. The result is Plaintiff's failure to plausibly allege that the class is numerous, that there are questions of law or fact common to the purported class, that Plaintiff's claims or defenses are typical of the class members, and that the representative parties will adequately protect the class. See Fed. R. Civ. P. 23(a).

The lack of sufficient allegations is especially problematic in the present context. While certainly the product-defect claim could be subject to generalized resolution, the other claims involving fraud and negligence are not typically appropriate for class treatment because they require highly individualized inquiry to determine liability. See, e.g., Amchem, 521 U.S. at 625 (explaining that, while not categorically excluded, "'mass accident' cases are likely to present 'significant questions, not only of damages but of liability and defenses of liability," and are "'ordinarily not appropriate' for class treatment"); Moore v. PaineWebber, Inc., 306 F.3d 1247, 1253 (2d Cir. 2002) ("'[A] fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed.'"); Amerio v. Gray, No. 15 Civ.

538, 2019 WL 4170160, at *7 (N.D.N.Y. Sept. 3, 2019)
(explaining that "without a presumption of reliance in favor
of the entire proposed class . . . negligent misrepresentation
plaintiffs could not establish that common issues
predominate, and class certification would also be
inappropriate").

On the bare and conclusory allegations in this
Complaint, the Court concludes that Plaintiff has failed to
allege a plausible entitlement to class treatment.
Determining that the class allegations must be stricken, the
Court need not, and does not, address Defendants' additional
argument that the proposed class includes members who lack
standing.

B.   THE MOTION TO STAY THE FEDERAL ACTION

Defendants further argue that the Complaint should be
dismissed under the first-filed rule because the State Court
Action is substantially similar and was brought two days
before this one. Plaintiff argues that the rule does not
apply.

On this point, Plaintiff has the better argument. The
first-filed rule applies only when both actions were filed in
federal court -- not, as here, when the first action was filed
in state court and the second in federal court. See, e.g.,
Kytel Int'l Grp., Inc. v. Rent A Ctr., Inc., 43 F. App'x 420,

422 (2d Cir. 2002) ("Because RAC's Texas action is in state court, it was error for the District Court to dismiss on the basis of the first filed rule.").

Nonetheless, on the basis of the facts presented here, the Court concludes that "the exercise of federal jurisdiction should be postponed until after the state court litigation is completed." De Cisneros v. Younger, 871 F.2d 305, 307 (2d Cir. 1989). While abstention "is the narrow exception, not the rule," it is within the Court's discretion to stay a duplicative action for reasons of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813-14, 817 (1976) (citations omitted); see also, Iacovacci v. Brevet Holdings, LLC, 437 F. Supp. 3d 367, 375 (S.D.N.Y. 2020) ("The doctrine is to be applied 'in a pragmatic, flexible manner with a view to the realities of the case at hand.'") (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 21 (1983)).

"In deciding whether to abstain under Colorado River, a district court must first determine whether the federal and state court cases are parallel." U.S. Bank Nat'l Ass'n as trustee Bank of Am., N.A. v. E. Fordham DE LLC, 804 F. App'x 106, 107 (2d Cir. 2020)). Federal and state cases are parallel

"when the two proceedings are 'essentially the same' -- when there is an identity of parties, and the issues and relief sought are the same." Id. at 107 (citing Nat'l Union Fire Ins. Co. v. Karp, 108 F.3d 17, 22 (2d Cir. 1997)).

Next, if the actions are deemed parallel, the court must consider six factors to determine whether abstention is appropriate:

> (1) the assumption of jurisdiction by either court over any res or property; (2) the inconvenience of the federal forum; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether state or federal law supplies the rule of decision; and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction.

U.S. Bank, 804 F. App'x at 107 (quoting De Cisneros, 871 F.2d at 307).

Here, the federal lawsuit and the State Court Action are indeed parallel. The named Plaintiff -- Jon Borgese -- is the same in both actions. The Defendants -- Baby Brezza Enterprises, LLC, Betesh Group, and The Betesh Group Holding Corporation, Inc. -- are also the same. The ten causes of action are likewise identical, and importantly, they all stem from the same alleged conduct: misrepresentations regarding the Baby Brezza machines' ability to mix the "perfect" baby formula. The relief requested in each action is also essentially the same: class certification; designation of

20

Borgese as class representative and his counsel as class counsel; and equitable and injunctive relief, including restitution, profit disgorgement, damages, and attorneys' fees. While Plaintiff withdraws his claim for injunctive relief in the present action, the remainder of the requests for relief are identical, and the Court consequently does not find that this difference meaningfully alters the symmetry of these lawsuits.

The only significant distinction between the two actions is the putative class definition. Here, Plaintiff purports to represent "all purchasers in the United States," whereas in the State Court Action, Plaintiff purports to represent all purchasers in New York. However, "[p]erfect symmetry of parties and issues is not required." Sitgraves v. Fed. Home Loan Mortg. Corp., 265 F. Supp. 3d 411, 413 (S.D.N.Y. 2017) (citations omitted). Instead, "parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of *all* claims presented in the federal case." Id.. And because the Court strikes the class allegations here, see Section III.A, supra, the case before this Court ultimately constitutes an individual action on behalf of

Borgese. The State Court Action therefore encompasses all the claims presented in this case.[8]

Thus, considering the identity of the parties, allegations, legal issues, and relief sought, the Court concludes that this action and the State Court Action are "essentially the same," and therefore parallel. See U.S. Bank, 804 F. App'x at 107.

Turning to the Colorado River factors, the first two factors are neutral: "the first one because there is no res or property involved; and the second one because . . . the state and federal courthouses in New York City are next-door neighbors." Arkwright, 762 F.2d at 210.

Similarly, the fourth factor is also neutral because the State Court Action was initiated just two days before the Complaint in this case was filed. In the State Court Action, the parties have adjourned the defendants' deadline to answer or otherwise respond to the complaint. Apart from the Letter Motion addressed herein, no other issues have been raised or adjudicated in this action, nor has discovery begun in either case. In other words, neither case has progressed ahead of the other in any material way.

---

[8] For this reason, the dismissal of defendant The Betesh Group, see supra note 1, likewise does not alter the parallelism of the two actions.

Colorado River factors three and five favor abstention.
Allowing two identical lawsuits to proceed in separate forums
would clearly result in piecemeal litigation, therefore not
only burdening and inconveniencing litigants, witnesses and
third parties, but "wast[ing] judicial resources and
invit[ing] duplicative effort." Arkwright, 762 F.2d at 211.
And because the suits arise from the same alleged conduct,
"they should be tried in one forum." Id. To permit parallel
lawsuits to go forward "creates the serious potential for
spawning an unseemly and destructive race to see which forum
can resolve the same issues first [which would be]
prejudicial, to say the least, to the possibility of reasoned
decisionmaking by either forum." Id. (quoting Arizona v. San
Carlos Apache Tribe of Ariz., 463 U.S. 545 (1983)).

As to factor five, state law issues predominate because
not a single claim Plaintiff asserts here was brought under
federal law. While the Second Circuit has explained that the
presence of state law issues in a complaint "does not weigh
heavily in favor of surrender of jurisdiction," this factor
still weighs, however slightly, in favor of abstention.
Arkwright, 762 F.2d at 211.

The final remaining consideration -- factor six -- also
weighs substantially in favor of abstention. Factor six asks
whether the state court proceeding will adequately protect

the rights of the party seeking to invoke federal jurisdiction. Here, "consolidation in state court could lead to more efficient factfinding and more reasoned decision-making" because the state court is best positioned to adjudicate state law claims. Arkwright, 762 F.2d at 211. This conclusion holds notwithstanding that the identical claims at issue are not particularly complex. See id. ("[I]f either forum is in a better position to sort out the issues presented by this case, it is the state court, as the case involves exclusively questions of local law.").

Out of six factors then, three are neutral and three favor of abstention. As the Second Circuit has explained, in weighing application of Colorado River, "no single factor is necessarily decisive and . . . the test 'does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case.'" De Cisneros, 871 F.2d at 307 (quoting Moses H. Cone, 460 U.S. at 16). While the balance should be "heavily weighted in favor of the exercise of jurisdiction," id. (internal quotation marks omitted), even accounting for this doctrinal sway, the Court is persuaded that the factors supporting Colorado River abstention in this case substantially outweigh the factors supporting the Court's exercise of jurisdiction.

Moreover, even if the Court considered the factors evenly split because "a neutral factor 'favors retention of the case,'" U.S. Bank, 804 F. App'x at 108 (quoting Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 103 (2d Cir. 2012)), the Court remains convinced that the circumstances presented here compel abstention for an additional, significant reason. Given that there is no difference between the claims Plaintiff asserts in the state and federal actions, and that the cases were filed only two days apart, the only "conceivable explanation" for Plaintiff's filing of identical state law claims in separate forums is an "effort[] of tactical gamesmanship" to either reserve the proverbial second bite at the apple or secure some bargaining advantage. Watson v. Mayo, No. 07 Civ. 54, 2008 WL 538442, at *1 (S.D.N.Y. Feb. 26, 2008) (dismissing a second suit on the basis of laches because the plaintiff had already proceeded to trial on the first case and lost); see also Canaday v. Koch, 608 F. Supp. 1460, 1473 n.23 (S.D.N.Y. 1985), aff'd sub nom. Cannady v. Valentin, 768 F.2d 501 (2d Cir. 1985) (staying a federal action under Colorado River because the court was "extremely reluctant to countenance the kind of 'procedural gamesmanship' engaged in by plaintiffs' attorneys in this case" (quoting Hartford Accident & Indem. Co. v. Hop-On Int'l Corp., 568 F. Supp.

1569, 1573 (S.D.N.Y. 1983)); <u>see also</u> <u>Goldberg</u>, 1998 WL 321446, at *9 (dismissing a class action complaint when the claims were "being used in an attempt to increase plaintiff's bargaining position," action which "should not be countenanced").

For these reasons, the Court declines to condone similar gamesmanship here and thus stays this case pending resolution of the State Court Action. <u>See</u> <u>Deluca v. GPB Auto. Portfolio, LP</u>, No. 19 Civ. 10498, 2020 WL 7343788, at *10 (S.D.N.Y. Dec. 14, 2020) ("Courts have inherent power over their dockets and thus have discretion to stay proceedings when they consider it appropriate.").

## IV.  ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the motion so deemed by the Court as filed by defendants Baby Brezza Enterprises LLC, The Betesh Group, and The Betesh Group Holding Corporation, Inc. ("Defendants") to dismiss the Complaint of Plaintiff John Borgese (Dkt. No. 22) is **GRANTED** as to The Betesh Group; and it is further

**ORDERED** that the motion so deemed by the Court as filed by Defendants to strike the class allegations (Dkt. No. 22) is **GRANTED**; and it is further

**ORDERED** that the motion so deemed by the Court as filed by Defendants to stay the action pending resolution of the

parallel action in New York state court (Dkt. No. 22) is **GRANTED;** and it is further

 **ORDERED** that Plaintiff is directed to inform the Court within thirty (30) days of the adjudication of the state court action concerning such resolution and Plaintiff's intent with regard to further litigation in the present case.


**SO ORDERED.**

Dated: New York, New York
    18 February 2021

            _____
             Victor Marrero
              U.S.D.J.